# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

     **Plaintiff,**

vs.                                **CR. No. 10-0420 JP**

RAMON VARELA CIAS,

     **Defendant.**

## MEMORANDUM OPINION AND ORDER

This case presents an unfortunate situation in which Defendant was unfairly deported, but because of high hurdles established by Congress the Court cannot now rectify Defendant's improper treatment.

On February 19, 2010, Defendant Ramon Varela Cias ("Defendant") was charged with illegal reentry after his removal from the United States to Mexico in violation of 18 U.S.C. § 1326(a).[1] *See* Information (Doc. No. 14). On April 13, 2010, Defendant, represented by attorney Kari Converse, filed a Motion to Dismiss Information (Doc. No. 22) (the "Motion") arguing that Defendant was illegally removed and therefore cannot be charged with illegal reentry. On April 26, 2010, the United States, represented by AUSA Paige Messec, filed United States' Response

---

[1](a) . . . Subject to subsection (b) of this section, any alien who--
    (1) has been denied admission, excluded, deported, or removed or has departed the United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
    (2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission[]
shall be fined under Title 18, or imprisoned not more than 2 years, or both.
8 U.S.C. §1326(a) and (b).

to Defendant's Motion To Dismiss Information (Doc. No. 27).  Defendant filed a Reply brief on May 10, 2010 (Doc. No. 28). The Court held a hearing on the Motion on May 19, 2010. Defendant was present and testified at the hearing. The pleadings and record of removal proceedings were admitted into evidence at the hearing.

On June 21, 2010, Defendant filed his Second Exhibit Regarding Motion To Dismiss Information (Doc. No. 31) asserting an additional argument that he was not given adequate notice of the removal decision before he was removed to Mexico. On June 24, 2010 after obtaining leave of Court, the United States filed United States' Surreply To Defendant's Motion To Dismiss Information (Doc. No. 34) in response to Defendant's additional argument.

After considering the pleadings, exhibits, testimony and arguments of counsel, the Court concludes that despite the legal error in the removal decision, Defendant has not met the onerous burden required to collaterally attack that decision. And since the removal decision stands, Defendant may be charged with illegal reentry. Thus, the Court will deny the Motion.

I. *Factual Background*

In 1990 Defendant became a lawful permanent resident of the United States as a seasonal agricultural worker. On December 4, 2000, Defendant was convicted of driving under the influence ("DUI") in Bingham County, Idaho. *See* Idaho Code Ann. § 18-8004(1)(a) (1994). *See* Ex. 3.  Because the December 2000 conviction was his third conviction for DUI, the offense was considered a felony under Idaho law. *See* Idaho Code Ann. § 18-8005 (1999).

In May 2001, the Immigration Custom Enforcement Agency ("ICE") served Defendant with a Notice To Appear alleging that under § 237(a) of the Immigration and Nationalization Act

2

("INA") Defendant was removable[2] because he had been convicted of an "aggravated felony," as defined in the INA. Defendant was transferred from custody in Idaho to an immigration detention center in Aurora, Colorado.

On June 2, 2001, Defendant appeared with his immigration attorney Mr. David N. Parmenter at a hearing before Immigration Judge James P. Vandello (the "IJ") in Aurora, Colorado. The hearing was continued on June 15, and July 6, 2001. *See* Hearing Transcripts Ex. 1.  On July 3, 2001, Defendant filed a motion (the "Venue Motion") asking the IJ to transfer the proceedings to Boise Idaho. *See* Ex. 4. In the Venue Motion, Defendant asserted that because he was a resident of Idaho, his case should have been under the jurisdiction of the Seattle, Washington immigration court. The IJ, however, did not rule on the Venue Motion.

During the June 15, 2001 hearing, the IJ informed Defendant and Mr. Parmenter that Defendant was removable because he had been convicted of an "aggravated felony" as defined in the INA. The IJ also determined that Defendant was not eligible for discretionary relief from removal, but the IJ informed Defendant that he could file an application for cancellation of removal:

> IJ: . . . Now, if you wish you may file an application for cancellation of removal to preserve the record on appeal, but I don't believe he's eligible so I would not give you a hearing.  But at least you could put it in the Record.
> A. [Mr. Parmenter] All right. One other thing I thought I would submit is maybe a memorandum on, I know the law is pretty clear on the felony DUI being an aggravated felony but maybe I could submit that, you know, that too.
> IJ: All right.
> A. Because it's pretty well decided in your mind.

---

[2] The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 and the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, changed the terminology for removal of resident aliens, replacing the term "deportation" with "removal." *See Jurado-Gutierrez v. Greene*, 190 F.3d 1135, 1140 n. 2 (10th Cir.1999).

> IJ: No, that's fine, you can certainly preserve the Record for that. . . . You may file a brief too. . . .

Ex. 1 Tr. 8:1-15 (June 15, 2001).

On July 6, 2001, the IJ ordered Defendant to be removed to Mexico citing *In re Magallanes*, Int. Dec. 3341 (BIA 1998), a case in which the Board of Immigration Appeals (the "BIA") determined that a felony DUI conviction under Arizona law was an aggravated felony crime of violence and a removable offense under the INA.[3] After the IJ issued his oral decision,[4] the following exchange took place:

> IJ: Counsel, did you wish to reserve your right to appeal or waive your right to appeal?
> A. [Mr. Parmenter] I'll waive the right, Your Honor, and discuss it with the family.
> IJ: So your client will not appeal?
> A. No. What I was indicating, Your Honor, was that I would like to reserve the right to appeal, discuss with the family their options.
> IJ: . . . Your appeal is reserved, sir, and the deadline for your appeal will be August 6th, is the final day where the appeal can actually be received at the Board of Immigration Appeals. . . .

Ex. 1 Tr. 12:1-13 (July 6, 2001).

Defendant appealed the removal order to the BIA, arguing that DUI should not be considered a crime of violence; and therefore, should not be considered an "aggravated felony" and a removable offense.

On October 31, 2001, the BIA summarily denied Defendant's appeal stating, "[t]he Board affirms, without opinion, the results of the decision below." Ex. 7. Mr. Parmenter received notice of the BIA's decision on November 5, 2001. Parmenter Aff. ¶ 8 (Doc. No. 31, Ex. A).

---

[3] In 2002 the BIA overruled *Magallanes* in *In re Ramos*, 23 I. & N. Dec. 336, Int. Dec. 3468, 2002 WL 1001049, (Ap. 04, 2002) (withdrawing decision in *Magdalanes* and holding that a Massachusetts conviction of felony driving under the influence was not a crime of violence under 18 U.S.C. § 16(b) and could not be the basis for removal of an alien).

[4] The record contains a written transcript of the IJ's oral decision. *See* Ex. 2.

4

Eight days later, on November 13, 2001, Defendant was removed to Mexico. Defendant testified at the hearing before this Court that he was not given notice of the BIA's decision before he was deported on November 13, 2001, which was before the expiration of the 30-day deadline to appeal the BIA's decision to the Tenth Circuit Court of Appeals.[5]  Defendant did not appeal the BIA decision to the Tenth Circuit.

On or about February 9, 2010, Defendant was found in Bernalillo County, New Mexico without permission from the Department of Homeland Security. On February 19, 2010, the Defendant was charged with illegal reentry after removal in violation of 8 U.S.C. § 1326(a) and (b). *See* Information (Doc. No. 14).

II. *Removal of Non-Citizens*

Under the INA, "[a]ny alien who is convicted of an aggravated felony . . ." may be removed upon an order of the Attorney General. 8 U.S.C. § 1227(a)(2)(A)(iii). The INA defines "aggravated felony" to include, *inter alia,* "a crime of violence (as defined in section 16 of title 18, . . .) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F).

A "crime of violence" is defined as

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16.

At the time of Defendant's November 2001 removal, the circuit courts of appeal were

---

[5] In his affidavit, Mr. Parmenter testified that he mailed the BIA decision to Defendant on November 8, 2001 but that it usually required a week for mail to reach Defendant at the detention center in Aurora, CO.

split on whether a state felony DUI conviction could be considered a conviction for a "crime of violence" under 18 U.S.C. § 16(b), and therefore, a removable aggravated felony offense under the INA. *See Leocal v. Ashcroft*, 543 U.S. 1, 6 (2004) (describing the circuit split). *Compare, Dalton v. Ashcroft*, 257 F.3d 200, 208 (2d Cir. 2001) (holding that a felony DWI conviction in New York was not a removable offense); *Ursu v. INS*, 20 Fed. Appx. 702, 705 (9th Cir. 2001) (ruling that a felony violation of the Florida DUI statute was not a removable offense); *United States v. Chapa-Garza*, 243 F.3d 921, 927 (5th Cir. 2001) (holding that felony DWI conviction under Texas law was not a crime of violence as defined by 18 U.S.C. § 16(b)) *with Tapia-Garcia v. INS*, 237 F.3d 1216 (10th Cir. 2001) (holding that a conviction under Idaho's felony DUI statute was a conviction for a "crime of violence" and was a removable offense); *Le v. United States Attorney General*, 196 F.3d 1352 (11th Cir. 1999) (per curiam) (holding that a conviction under the Florida DUI statute was a removable offense).

In January 2001, a few months before Defendant's removal proceeding was initiated, the Tenth Circuit held that an Idaho felony DUI offense constituted a crime of violence and was therefore an aggravated felony and a removable offense. *Tapia-Garcia*, 237 F.3d at 122. By contrast a few months later, the Ninth Circuit concluded that felony DWI under California law was not a "crime of violence" under 18 U.S.C. § 16(b) for purposes of enhancement under the sentencing guidelines, a standard that had been applied to removal cases. *United States v. Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir. 2001) (finding that because the California statute could be violated through negligence alone, "a violation of that [statute] is not a "crime of violence" as that term is defined at 18 U.S.C. § 16[(b)].").

On November 9, 2004 three years after Defendant was removed, the United States Supreme Court resolved the circuit split in *Leocal v. Ashcroft*, 543 U.S. 1, 6 (2004). In *Leocal*,

the Supreme Court held that a conviction for felony DUI under a Florida statute that had no *mens rea* component or that required only a showing of negligence in the operation of a vehicle could not be considered a conviction for a "crime of violence;" and therefore, could not be the basis for removal. *Leocal*, 543 U.S. at 11. The *Leocal* decision has been applied retroactively. *United States v. Rivera-Nevarez*, 418 F.3d 1104, 1107 (10th Cir. 2005), *cert. denied* 547 U.S. 1114 (2006) (stating, "decisions of statutory interpretation are fully retroactive because they do not change the law, but rather explain what the law has always meant."). Consequently, *Leocal* provides the correct interpretation of the law as it stood in 2001 when Defendant was removed. Defendant should not have been considered an aggravated felon and should not have been removed. In other words, Defendant's 2001 removal is now considered incorrect as a matter of law.  In the Motion, Defendant argues that because he was illegally removed he cannot not be charged with illegal reentry under the due process clause of the Fifth Amendment.

III. *Collateral Attack of Removal Decision*

In 1987 the Supreme Court held that a defendant charged with illegal reentry under 18 U.S.C. § 1326 may collaterally attack a previous removal order under the Fifth Amendment's due process clause. *United States v. Mendoza-Lopez*, 481 U.S. 828, 837-38 (1987) (concluding that because an administrative removal order is used as a predicate element of the criminal reentry offense, a defendant charged with that offense may collaterally attack the removal order). In *Mendoza-Lopez*, the respondent, who had been charged with illegal reentry, had moved to dismiss his indictment arguing that he was denied a fundamentally fair deportation hearing. *Id.* at 831. The District Court dismissed the indictment finding that respondent's due process rights had been violated because he had not knowingly and intelligently waived his right to apply for suspension of deportation and his right to appeal. *Id.* at 831-32. The Supreme Court affirmed and

7

stated, ". . . at the very least . . . where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." *Id.* at 837-38. The Court, however, declined "to enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review." *Id.* at 839 n. 17. But, the court listed as examples of fundamental procedural errors the use of a coerced confession, adjudication by a biased judge, and the use of perjured testimony. *Id.* (citing *Rose v. Clark*, 478 U.S. 570, 577 (1986) and *Rose v. Lundy*, 455 U.S. 509, 543-544 (1982)).

In 1996 Congress codified the right, recognized in *Mendoza-Lopez*, to collaterally challenge a removal decision:

> (d) In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that
>
> > (1) the alien exhausted all administrative remedies that may have been available at the time of his deportation;
> > (2) the deportation proceedings improperly deprived the alien of the opportunity for judicial review; and
> > (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d)(1)-(3).[6] *See United States v. Wittgenstein*, 163 F.3d 1164, 1170 (10th Cir. 1998) (stating that § 1326(d) met the requirements of due process set out in *Mendoza-Lopez*); *United States v. Lopez-Ortiz*, 313 F.3d 225, 229 (5th Cir. 2002) (stating that Congress effectively codified *Mendoza-Lopez* in § 1326(d)).

Collateral challenges of removal decisions focus on violations of non-citizens'

---

[6] The use of the term "deportation" was not changed to "removal" in this section.

procedural due process rights. *Lopez-Ortiz*, 313 F.3d at 230.  Because removal proceedings are civil, not criminal, procedural protections accorded non-citizens in a removal proceeding are less stringent than those available to a criminal defendant. *United States v. Rangel de Aguilar*, 308 F.3d 1134, 1137 (10th Cir. 2002). The Supreme Court has held that due process for an alien who faces removal includes notice of the charges against him, a hearing before an executive or administrative tribunal, and a fair opportunity to be heard. *Kwong Hai Chew v. Colding*, 344 U.S. 590, 597-98 (1953).

Defendant argues that the record of the 2001 removal proceedings and the evidence presented to this Court reveal due process violations sufficient to meet the criteria of § 1326(d). The United States concedes that Defendant has met the first of the § 1326(d) criteria because Defendant exhausted all administrative remedies that were available to him. However, the United States argues that Defendant has failed to establish that the proceedings improperly denied him the opportunity for judicial review or that the entry of the removal order was fundamentally unfair.

A. *Did the immigration proceeding improperly deprive Defendant of the opportunity for judicial review?*

Removal proceedings are presumed valid; therefore, the defendant has the burden to show that the proceedings unfairly deprived him of his right to judicial review, that the removal proceedings were fundamentally unfair, and that he was prejudiced.  *Rivera-Nevarez*, 418 F.3d at 1109; *United States v. Aguirre-Tello*, 353 F.3d 1199, 1204 (10th Cir. 2004).  *Rivera-Nevarez* closely parallels this case. In 1999 Rivera-Nevarez was removed after a 1997 Texas DUI conviction. In 2003 Rivera-Nevarez was indicted for illegal reentry. Rivera-Nevarez moved to

dismiss the indictment arguing that decisions by the Tenth Circuit,[7] and the BIA[8] rendered after 1999 established that "DUI was not a "crime of violence" or "aggravated felony" under the INA. The district court denied the motion stating that Rivera-Nevarez had failed to address the retroactive application of the Tenth Circuit and BIA decisions.  The district court concluded that Rivera-Nevarez's removal was valid under "then-existing law[.]" *Id.* at 1106. While Rivera-Nevarez's appeal to the Tenth Circuit was pending, the Supreme Court decided *Leocal* and conclusively determined that DUI was not a removable offense. *Leocal*, 543 U.S. at 11. The Tenth Circuit therefore determined that the decision in *United States v. Lucio-Lucio* applied retroactively; and thus, Rivera-Nevarez's removal was incorrect as a matter of law. Despite the legal error, however, the Tenth Circuit held that Rivera-Nevarez could not collaterally attack his removal because he could not demonstrate that his removal proceedings had unfairly deprived him of the opportunity for judicial review. *Id.* at 1111. Rivera-Nevarez argued that at the time of his removal hearing, the jurisdiction stripping provisions of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") eliminated the right of a person who had been convicted of an aggravated felony to directly appeal a removal decision; and therefore, he was "improperly deprived" of the opportunity for judicial review of the removal decision.[9] The Tenth

---

[7] *United States v. Lucio-Lucio*, 347 F.3d 1202, 1204-06 (10th Cir.2003).

[8] *In Re Ramos*, 23 I. & N. Dec. 336, 347, 2002 WL 1001049 (BIA 2002) (en banc)

[9] Section 1252(a)(2)(C) of title 8 provides,
(C) Orders against criminal aliens
Notwithstanding any other provision of law (statutory or nonstatutory), . . . except as provided in subparagraph (D), no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section . . . 1227(a)(2)(A)(iii) . . . of this title, . . . .
8 U.S.C. § 1252(a)(2)(C).

Circuit noted that regardless of those provisions, circuit courts retained jurisdiction to determine whether the jurisdiction stripping provisions applied. *Id.* at 1109. Consequently, Rivera-Nevarez could have appealed "the threshold question of which particular crimes constitute crimes of violence under the INA." *Id.* The Tenth Circuit recognized that the Court of Appeals for the Fifth Circuit, the circuit from which Rivera-Nevarez had been removed, had not yet decided whether felony DUI was a crime of violence under the INA, but the Tenth Circuit concluded that even this uncertainty did not deprive Rivera-Nevarez of his right to appeal. *Id.* at 1110.

In this case, just as in *Rivera-Nevarez,* the Defendant's DUI conviction should not have been considered a removable offense, and the IJ should not have ordered Defendant's removal. However, Defendant could have appealed, but did not appeal, the IJ's decision. Defendant argues that the following additional circumstances set this case apart from *Rivera-Nevarez* and warrant a finding that the proceedings improperly denied him the opportunity for judicial review.

### 1. *Forum Shopping*

When ICE officials initiated removal proceedings against Defendant he was incarcerated in Idaho, a state located within the jurisdiction of the Ninth Circuit Court of Appeals. Yet, ICE officials initiated removal proceedings in Colorado, located within the jurisdiction of the Tenth Circuit Court of Appeals, and Defendant was transferred to an immigration detention center in Aurora, Colorado. *See* Ex. 8 (Notice to Appear). Defendant asserts that ICE transferred him from Idaho to Colorado to take advantage of the recent Tenth Circuit decision in *Tapia-Garcia,* in which the Tenth Circuit had held that an Idaho felony DUI conviction was a removable aggravated felony offense. *See Tapia-Garcia*, 237 F.3d at 1222. Defendant asserts that ICE

could have transferred him to the immigration detention center in Tacoma, Washington, within the Ninth Circuit; but instead, ICE engaged in forum shopping and initiated removal proceedings in Colorado where they knew removal was certain. Defendant asserts that if he had remained in the Ninth Circuit, the IJ would have been bound by the August 2001 *Trinidad-Aquino* decision and would not have ordered removal. *See Trinidad-Aquino*, 259 F.3d 1140, 1145 (9th Cir. 2001).[10]

The United States counters that there is no evidence of record that ICE purposefully transferred Defendant to Colorado because the Tenth Circuit's interpretation of the law was more favorable to removal. The United States asserts that Defendant could have been transferred to Colorado because Idaho does not have an immigration detention center and because there was room at the Colorado facility. The reason for the transfer is not revealed in the record of the immigration proceedings, and Defendant presented no evidence to show that ICE engaged in forum shopping.[11]

In addition to the lack of evidence of forum shopping, Defendant has failed to show that venue made a difference in the result. Significantly, the IJ did not cite the Tenth Circuit case *Tapia-Garcia* to support his opinion. The IJ cited a 1998 BIA decision, *In re Magallanes*, Int. Dec. 3341, 22 I. & N. Dec. 1, 1998 WL 133301 (BIA 1998), a case decided by the Tucson,

---

[10] Even though the opinion in *Trinidad-Aquino* was decided in August 2001, after the IJ's decision in July 2001, Defendant maintains that an IJ in the Ninth Circuit would have denied removal based on other Ninth Circuit decisions interpreting 18 U.S.C. § 16(b) "crimes of violence" more stringently. *Id.* at 1145 (discussing other Ninth Circuit decisions).

[11] The only detention facilities in the northwestern United States are in Washington and Colorado. *See* http://www.ice.gov/pi/dro/facilities.htm (last visited July 19, 2010). There is no immigration judge located in Idaho. *See* http://www.justice.gov/eoir/sibpages/ICadr.htm (last visited July 19, 2010).

Arizona immigration court, located in a state that is part of the Ninth Circuit. In *Magallanes*, the BIA upheld the IJ's determination that an Arizona conviction for felony DUI was a removable offense. *Id.* at *2.

Regardless of where removal proceedings occurred, Defendant must show that the deportation proceedings *deprived him* of the opportunity for judicial review of the removal decision. 18 U.S.C. § 1326(d)(2) (emphasis added). Defendant had the right to appeal the IJ's decision and BIA's affirmance of that decision to the Tenth Circuit, but for reasons not revealed by the evidence, Defendant did not appeal. The Court concludes that there is no evidence that ICE officials manipulated the proceedings by transferring Defendant to a detention center in Colorado in order to gain a favorable ruling on removal. Hence, Defendant's transfer from Idaho to Colorado does not support a finding that the proceedings improperly denied Defendant the opportunity to appeal the adverse removal decision to the Tenth Circuit.

## 2. *Timing of Removal*

Next, Defendant argues that when he was removed on November 13, 2001, he had not received notice that his appeal had been denied by the BIA; therefore, he did not know that his appeal had been denied.  In addition, Defendant argues that he was hastily removed two weeks before the deadline to file an appeal to the Tenth Circuit making it practically impossible to prosecute an appeal from Mexico.[12] The United States argues that nothing prevented Defendant from appealing to the Tenth Circuit after his removal, and that he could have prosecuted an appeal, which involved only a legal issue, through his lawyer Mr. Parmenter. The United States points out that after the IJ issued his oral decision, Mr. Parmenter informed the IJ that Defendant

---

[12] Under 8 U.S.C. § 1252(3)(1) (2000), Defendant had 30 days to file a petition for review with the Tenth Circuit.

was not waiving his right to appeal; thus, nothing prevented prosecution of an appeal after the BIA affirmed the IJ.

Some courts have found that a hasty removal does deprive a non-citizen of the right to appeal.  However, these cases have uniformly found deprivation when removal is executed before an administrative appeal is concluded.  For example, the removal of a non-citizen while his administrative appeal is still pending has been held to be a deprivation of judicial review. *See United States v. Perez*, 330 F.3d 97, 103 (2d Cir. 2003); *United States v. Frias-Gomez*, 262 F. Supp. 2d 11 (E.D.N.Y. 2003). The same is true when a non-citizen is deported while his motion for reconsideration is still pending before the BIA. *United States v. Garcia-Jurado*, 281 F. Supp. 2d 498 (E.D. N.Y. 2003); *United States v. Lopez-Velasquez*, 568 F.3d 1139 (9th Cir. 2009), *reh'g en banc granted*, 2010 WL891030 (9th Cir. Mar. 8, 2010). Defendant, however, was not removed while his appeal to the BIA was pending; he was removed after the BIA had denied his appeal.  Moreover, there was no procedural impediment to Defendant's appeal to the Tenth Circuit after removal. The statute under which an alien may appeal a BIA decision explicitly provides that an alien may be removed before taking an appeal. *See* 8 U.S.C. § 1252(b)(8) (describing procedure for appealing final orders of removal to circuit courts of appeal).  In sum, Defendant was not procedurally prevented from appealing after he was removed, and the timing of his removal does not support a finding that Defendant was improperly deprived of judicial review.

3.  *Immigration Judge's Assertion That Defendant Was Not Eligible For Cancellation of Removal*

Defendant argues that he was deprived of judicial review because the IJ told Defendant and his counsel at the removal hearing that he was not eligible for cancellation of removal:

14

> . . . [T]he way I look at this case, it appears that he's properly charged under the aggravated felony provisions, however, and so he cannot receive cancellation.  However, if he has a family member who can petition for him as an immediate relative, it may be possible for him to adjust status without a waiver because this is not a crime of moral turpitude.

Tr. 6:2-9 (June 15, 2001).  After determining that Defendant did not have a relative who was a United States citizen to petition for him and receive an adjustment in status, the IJ stated to Mr. Parmenter,

> Now, if you wish you may file an application for cancellation of removal to preserve the record on appeal, but I don't believe he's eligible so I would not give you a hearing.  But at least you could put it in the Record.

Tr. 8:1-5 (June 15, 2001).

Defendant argues that he was effectively deprived of the opportunity to appeal because he actually had not been convicted of an aggravated felony, as subsequently determined in the *Leocal* decision, and the IJ's legal misstatement combined with the BIA's summary denial of appeal deterred him from seeking either cancellation or appealing to the Tenth Circuit. Defendant primarily relies on *United States v. Lopez*, 445 F.3d 90, 99-100 (2d Cir. 2006) to support his argument. In *Lopez*, the IJ in a 1997 removal hearing erroneously applied provisions of the AEDPA and IIRIRA retroactively and told Lopez that his 1994 felony conviction rendered him ineligible for relief from removal. *Id.* at 92.[13] The BIA dismissed Lopez's appeal and held that Lopez's conviction made him "statutorily ineligible" for relief. However, this conclusion

---

[13] Prior to 1996, § 212(c) of the INA vested the Attorney General with "broad discretion to cancel deportation orders for aliens who met certain residence requirements and had not served five years in prison for an aggravated felony."  8 U.S.C. § 1182(c) (repealed 1996).  The enactment of AEDPA and IIRIRA extinguished the prospect of such relief for many categories of aliens particularly those who were convicted of "aggravated felonies" as defined in the INA. Section 440(d) of AEDPA eliminated § 212(c) waivers of deportation for those aliens who were convicted of an aggravated felony.

was legally incorrect, and Lopez in fact was eligible for relief from removal because the new statutes should not have been applied retroactively. *Id.* at 93 (citing *I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) (holding that new statutes were not retroactive)).  Justice Sotomayor, then a circuit court judge, determined that the IJ's and BIA's misstatements denied Lopez a "realistic opportunity for judicial review within the meaning of § 1326(d)(2)." *Id.*

Defendant argues that the IJ's misstatements to him that he was ineligible for relief because he was an aggravated felon similarly denied him of a realistic opportunity for judicial review. As revealed by the Supreme Court in *Leocal*, Defendant, at the time he was removed, was in fact not an aggravated felon and was eligible for cancellation of removal in addition to being non-removable. Defendant asks the Court to apply *Lopez* and other cases and find that the IJ's misstatements to Defendant and to his lawyer were a powerful deterrent to appeal and effectively denied Defendant the opportunity for judicial review. *See Lopez*, 445 F.3d at 98 (stating, "[t]he fact that an administrative body told [Lopez] that no such relief existed is a powerful deterrent from seeking judicial relief.").

Unfortunately, the IJ's statements do not rise to the level of a procedural error sufficient to fulfill the § 1326(d)(2) requirement under Tenth Circuit law. In *United States v. Aguirre-Tello*, 353 F.3d 1199 (10th Cir. 2004), a case that arose before the enactment of the AEDPA and the IIRIRA, the Tenth Circuit held that a defendant facing removal does not have the constitutional right to be informed of the availability of discretionary relief. *Id.* at 1205 (stating that a majority of circuits hold similarly). Defendant asserts that *Aguirre-Tello* has been undermined by the recent ruling in *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010) in which the Supreme Court held that an attorney renders ineffective assistance of counsel when he fails to advise a client of the immigration consequences of a guilty plea in a criminal case. *Id.* at 1483. Defendant further

16

asserts that in the seminal case *Mendoza-Lopez* the Supreme Court held that the IJ deprived the respondent of judicial review by permitting a waiver of the right to appeal that was not the result of considered judgment, and by failing to advise respondent properly of his eligibility to apply for suspension of deportation. *Id.* at 840.

The case law, however, illustrates that the focus of the inquiry should be on procedural failures such as an unconsidered and unintelligent waiver of appeal, *Mendoza-Lopez*, 481 U.S. at 840; an inadequate explanation of an alien's right to a hearing, *United States v. Sanchez-Peralta,* 1998 WL 63405, at *5 (S.D.N.Y. Feb. 13, 1998); and a failure to inform the alien of the time and date of a hearing, *United States v. Montano-Bentancourt,* 151 F. Supp. 2d 794, 796-97 (W.D. Tex.2001). Moreover, even though the IJ erroneously determined that Defendant was an "aggravated felon" as defined in the statute, the IJ indicated that counsel could file an application for cancellation to preserve the right to appeal. And, Defendant did file an application for cancellation of removal.  *See* Ex. 9 (Application for Cancellation of Removal)  In addition, Defendant appealed the IJ's decision to the BIA.  Both the application for cancellation and the appeal to the BIA undermine Defendant's argument that he was persuaded to forego judicial review in response to the IJ's statements. In sum, none of the alleged impediments in the immigration proceeding -- the location of the proceeding, the timing of Defendant's removal, or the misstatements of the IJ -- prevented Defendant from appealing the legal basis for his removal to the Tenth Circuit. Therefore, Defendant has failed to show that he was deprived of the opportunity for judicial review, and Defendant has not met the second requirement for collateral challenge in  8 U.S.C. § 1326(d)(2).

B. *Was the removal proceeding fundamentally unfair?*

Defendant argues that the removal proceeding was fundamentally unfair based on the

following: 1) the IJ ordered removal based on a mistaken interpretation of the law; 2) ICE officials manipulated his ability to obtain meaningful review by moving him from Idaho to Colorado within the Tenth Circuit; and 3) ICE removed Defendant from the United States to Mexico before he had a meaningful opportunity to seek judicial review. Defendant asks this Court to find that the IJ's legal error, caused by the transfer to a state within the Tenth Circuit and compounded by the hasty removal to Mexico, rendered the removal proceedings fundamentally unfair and prejudicial.

An alien subject to removal is entitled to procedural due process under the Fifth Amendment, "designed to ensure that the proceeding is fundamentally fair." *Aguirre-Tello*, 353 F.3d at 1204. To establish fundamental unfairness, the Tenth Circuit requires the defendant to show: (a) that a fundamental error occurred, and (b) prejudice resulting from that error.[14] *Id.*

Defendant cites *Camancho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006), a case involving a 1998 removal after a conviction for vehicular homicide. Six years later after the Supreme Court decided *Leocal*, Camancho-Lopez was indicted for illegal reentry. He moved to dismiss the indictment arguing that the IJ committed a legal error. Based on the legal error, the Court of Appeals for the Ninth Circuit determined that the proceeding was fundamentally unfair and prejudicial because Camacho's prior conviction did not fit the legal definition (from *Leocal*) of an aggravated felony. *Id.* at 930.[15]

Defendant also asks this Court to follow the lead of *United States v. Girosky-Garibay*,

_____

[14] Prejudice requires a defendant to show a "reasonable likelihood that, but for the errors complained of, he would not have been [removed]." *Aguirre-Tello*, 353 F.3d at 1208.

[15] The government had conceded that Camancho-Lopez had exhausted administrative remedies and was deprived of meaningful opportunity for judicial review. *Id.* at 930.

176 F. Supp. 2d 705 (W.D. Tex. 2001), a case involving a defendant who was removed after a felony DWI conviction in Texas. *Id.* at 708. Girosky-Garabay argued that the order of removal violated his due process rights because the IJ erroneously interpreted the law. *Id.* United States District Judge Briones agreed and dismissed the indictment finding that the IJ's erroneous application of the law "is a type of defect that renders a removal proceeding fundamentally unfair and results in a denial of justice." *Id.* at 711. In a subsequent case, United States District Judge Garcia in the Western District of Texas followed Judge Briones' reasoning and held that fundamental unfairness may result "when the removal order is based on an erroneous application of the law." *See United States v. Ojeda-Escobar*, 218 F. Supp. 2d 839, 844 (W.D. Tex. 2002) (citing *Girosky-Garibay*). However, in a later case *United States v. Sotelo-Mendoza*, Judge Briones recognized that *Girosky-Garibay* was impliedly overruled by the Fifth Circuit Court of Appeals in *United States v. Lopez-Ortiz*, 313 F.3d 225 (5th Cir.2002), and concluded that fundamental fairness requires procedural fairness not legal accuracy. *Sotelo-Mendoza*, 234 F. Supp. 2d 671, 678 (W.D. Tex. 2002), *aff'd* 76 Fed. Appx. 567 (5th Cir.2003), *cert. denied* 540 U.S. 1199 (2004).[16] Thus, this Court cannot follow the lead of Judge Briones in *Girosky-Garibay*. Defendant has failed to show that the procedure applied to him was so deficient as to rise to the level of fundamental unfairness. *Sotelo-Mendoza*, 234 F. Supp. 2d at 678.

Defendant's argument ignores the limited due process standard under which he may challenge the removal order. The IJ's legal error that came to light after *Leocal* in 2004 had an unfortunate effect on Defendant's life, but this error is not considered a procedural deficiency. The error, therefore, did not render the proceedings "fundamentally unfair in violation of due

---

[16] *See also United States v. Dusevic*, 2005 WL 3133507, at * 7 (E.D. Mich. Nov. 23, 2005) (stating that the holding in *Girosky-Garibay* had been overturned by the Fifth Circuit).

process." *Aguirre-Tello*, 353 F.3d at 1207.  The place to correct legal errors is on direct appeal, not by collateral challenge.

### C.  *Does Mendoza-Lopez provide a separate reason for dismissal?*

Defendant argues that *Mendoza-Lopez,* 481 U.S. 828 (1987) provides a separate and independent basis for collaterally attacking the removal order. In that case, the defendant contended that the IJ accepted unknowing waivers of the right to apply for suspension of deportation and appeal. *Id.* at 831-32.  The District Court agreed and dismissed the indictment. *Id.* The Supreme Court held that because the waivers of Mendoza-Lopez's rights were  not considered or intelligent, he was "deprived of judicial review" of his deportation proceeding." *Id.*  Congress codified and replaced *Mendoza-Lopez* by enacting § 1326(d). *Mendoza-Lopez* requires no more protection than § 1326(d) and does not provide a separate avenue for collateral attack of a removal order.

### IV.  *Conclusion*

Due to the retroactive application of the holding in *Leocal*, Defendant should not have been removed because he had not been convicted of an aggravated felony as defined in the INA. Removal proceedings, however, are civil proceedings, not criminal ones, "and various constitutional protections associated with criminal proceedings therefore are not required." *Michelson v. INS*, 897 F.2d 465, 467 (10th Cir.1990). By passing 18 U.S.C. § 1326(d), Congress afforded Defendant a very limited right to collaterally attack a removal order, including an illegal removal order. Although Defendant has exhausted his administrative remedies, he has failed to show that the removal proceedings denied him the opportunity for judicial review. Moreover, Defendant has failed to show that the removal proceedings were fundamentally and prejudicially unfair. Under a common sense definition of fairness, after the holding in *Leocal*

and its retroactive application, Defendant's 2001 removal appears to this Court to be unfair. This Court, however, is bound by the standards of § 1326(d) and the case law interpreting it. Unfortunately, this Court must uphold the removal order because Defendant has been unable to meet the difficult burden of showing procedural due process violations. Therefore, the removal decision stands, Defendant has been properly charged with illegal reentry, and his Motion must be denied.

IT IS ORDERED that the Motion To Dismiss Information (Doc. No. 22) is denied.

_____

SENIOR UNITED STATES DISTRICT JUDGE